Gladstone-Arcuni, Inc. v. Commissioner.
Gladstone-Arcuni, Inc. v. Commissioner
Docket No. 85003.
United States Tax Court
T.C. Memo 1962-185; 1962 Tax Ct. Memo LEXIS 122; 21 T.C.M. (CCH) 1016; T.C.M. (RIA) 62185; August 6, 1962
*122 Karl W. Windhorst, Esq., 125 Park Ave., New York, N. Y., for the petitioner. Warren S. Shine, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $26,170.79 in income tax for the fiscal year ended June 30, 1954. The only issue for decision is whether the Commissioner erred in disallowing $38,060.44 of a deduction of $163,452.18 taken for compensation of its two officers. Findings of Fact The petitioner, a New York corporation, filed its Federal income tax return for its fiscal year ended June 30, 1954, with the director of internal revenue for the Upper District of Manhattan. It claimed thereon a deduction of $163,452.18 for compensation of its two officers, Joseph P. Arcuni, president, and Harry Gladstone, secretary-Treasurer, one-half to each. The Commissioner, in determining the deficiency, disallowed $38,060.44 of the aforesaid deduction, as "excessive and unreasonable." The petitioner's business is the designing, styling, manufacturing under contract and selling of women's dresses. The only fixed assets of the petitioner, in addition to cash, were office equipment and *123 a cutting table. It sold during the taxable year one general price line of cotton dresses, i.e., $45 per dozen. It sold about one million such dresses in that year. Arcuni and Gladstone were the only officers and stockholders of the petitioner. Each owned 40 shares of its no-par common stock. Arcuni owned 10 shares and Gladstone 150 shares of its non-dividend, nonvoting $100 par preferred stock. The two men were not related by blood or marriage. Gladstone and Arcuni had had broad experience in the business of making and selling at wholesale ladies' cotton dresses before they met in 1938. Gladstone was then operating a business as sole proprietor, making and selling children's and misses' dresses. Gladstone employed Arcuni in the first half of 1938 and the employment continued until they formed the petitioner in 1942. Gladstone transferred his business to the petitioner on August 7, 1942, for 40 shares of its common stock and 150 shares of its preferred stock. Arcuni received at that time 40 shares of its common stock in cancellation of an indebtedness of $4,000. Gladstone was to have charge of production and Arcuni was to have charge of sales, each at a salary of $125 per week. *124 The compensation was changed in a September 1942 agreement by giving each 2 1/2 percent of net sales of the petitioner in addition to the salaries. The salaries were increased by board action on June 23, 1950, to $200 and on December 27, 1950, to $250 per week. Gladstone and Arcuni were not reimbursed for travel and other business expenditures made by them. The following tabulation shows the amount of total compensation paid by the petitioner to Harry Gladstone and Joseph P. Arcuni; the amount of net sales, net income and tax liability reported by the petitioner on its Federal income tax returns; and the amount of cash dividends paid on the common stock by the petitioner during each of the indicated years: Total Compensa-
tion Paid to
Petitioner's
Harry Gladstone
Petitioner's
Petitioner's
Income Tax
FYE
and
Net
Net
Liability
Cash
6/30
Joseph P. Arcuni
Sales
Income
per return
Dividends
1943
$ 30,380
$ 347,603
$ 5,103
$ 1,277
1944
31,759
375,183
8,149
1,977
1945
29,494
329,881
8,224
2,120
1946
27,060
307,616
8,100
1,925
1947
20,918
158,372
1,894
397
1948
31,288
431,720
13,840
3,083
1949
44,466
597,860
14,115
3,146
$ 7,000
1950
63,251
1,003,742
81,941
31,137
17,000
1951
86,271
1,256,167
55,044
21,057
10,000
1952
105,795
1,592,903
82,039
37,160
44,000
1953
125,391
1,981,458
67,190
29,416
15,000
1954
163,452
2,746,419
78,994
35,577
15,000
*125 The increase in sales in the taxable year was not due to any improvement in economic conditions. The petitioner employed a salesman for the first time in 1948 and during the tax year it paid total commissions of $64,249.05 at 5 percent on net sales credited to three salesmen. The prevailing commission rate at that time was 7 to 7 1/2 percent on net sales. Most of the sales credited to these three men were to customers previously obtained by Arcuni, whose purchases were serviced in 1954 to some extent by one of the three salesmen. These salesmen did not work exclusively for the petitioner and they brought in little new business to the petitioner. Gladstone and Arcuni devoted all of their time to the affairs of the petitioner and spent long hours for six days a week, without vacations, on that work. They were the only executives of the petitioner. They made all important plans and decisions and performed the important tasks in the operation of the business. They worked well as a team from the designing of exclusive materials through the various stages to the delivery of the saleable finished product. They were extremely able. The increase in sales and the financial success of the *126 business were due to their work for the petitioner. The total compensation of $163,452.18 received in the taxable year by Gladstone and Arcuni was reasonable compensation for the services rendered by them during that year. All stipulated facts are incorporated herein by this reference. Opinion The Commissioner, in determining the deficiency, disallowed the excess of the compensation paid in fiscal 1954 over the amount paid these same two men in fiscal 1953. He gave no reason for this action except to say that the additional amount was "excessive and unreasonable." He called no witness. The petitioner has shown by a fair preponderance of the evidence, at least, that the total compensation paid to these two men was not excessive but was reasonable under all of the circumstances. It has been shown that Gladstone and Arcuni were unusually capable and energetic; the operation of the petitioner was unique in that two men performed so many important tasks which usually required the services of substantially more men; its rise in the industry was rapid; it was highly regarded; and it had satisfied customers upon whom it could count in planning its seasonal and highly competitive *127 business. Its total costs and expenses were not excessive and its net earnings and dividends were in substantial amounts. The demonstrated importance of the services of these two men in the success of this difficult business, in which fixed assets played such a minor part, justifies the payment to them of the large part of the gross income which those services produced. The Commissioner erred in disallowing the deduction of a part of the compensation paid to them. Decision will be entered under Rule 50.